IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

J.S.S.,[1]

        Plaintiff,

vs.                                    Case No. 18-2605-SAC

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

## MEMORANDUM AND ORDER

On May 24, 2017, plaintiff filed an application for social security disability insurance benefits. Plaintiff alleged a disability onset date of April 19, 2017. The application was denied initially and on reconsideration. An administrative hearing was conducted on May 1, 2018. The administrative law judge (ALJ) considered the evidence and decided on June 4, 2018 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's application for benefits.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42

---

[1] The initials are used to protect privacy interests.

1

U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This standard is "not high," but it is "more than a mere scintilla.'" Id. (quoting Consolidated Edison, 305 U.S. at 229). It does not require a preponderance of the evidence. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v.

Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). The court reviews "only the sufficiency of the evidence, not its weight." Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

II. THE ALJ'S DECISION (Tr. 27-38).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 28-29). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is

able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity. Id. In this case, the ALJ decided plaintiff's application should be denied at the fifth step of the evaluation process.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2019. Second, plaintiff has not engaged in substantial gainful activity since April 19, 2017. Third, plaintiff has the following severe impairments: coronary artery disease/cardiomyopathy by history, history of degenerative disc disease/degenerative joint disease of the cervical spine status post anterior cervical decompression and fusion; obesity; mild neurocognitive disorder; history of remote knee and shoulder surgeries; and chronic obstructive pulmonary disease. Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity (RFC) to perform

4

sedentary work as defined in 20 C.F.R. 404.1567(a) in that: he can lift and carry 10 pounds occasionally and 10 pounds frequently; he can sit for 6 hours out of an 8-hour workday, and stand and walk for 2 hours out of an 8-hour workday; he can never climb stairs, ramps, ropes, ladders, or scaffolds; he can occasionally balance and stoop; he can never kneel, crouch or crawl; he cannot reach overhead; and he should avoid concentrated exposure to extreme heat and cold, pulmonary irritants, unprotected heights, excessive vibrations, and hazardous machinery. The ALJ further found that plaintiff can perform unskilled work only and is limited to routine, repetitive tasks that require no more than occasional contact with coworkers or supervisors. Finally, based upon the testimony of a vocational expert, the ALJ determined that plaintiff cannot perform his past relevant work but that he could perform other jobs existing in the national economy, such as semiconductor assembler, printed circuit board inspector and wire wrapper.

III. ARGUMENTS

    A. Background

Plaintiff's formal education ceased after the seventh grade. He worked thereafter in the construction trade or as a warehouse worker. Plaintiff had a severe heart attack on or about April 18, 2017 when he was mowing the grass. He was 46 years old. Plaintiff has reported that it was estimated he had no heartbeat or breathing for eight to eleven minutes. (Tr. 518). Most fortuntately, he

5

was resuscitated and given hospital treatment, eventually being released on or about May 1, 2017.

Plaintiff centers most of his arguments to reverse and remand upon evidence concerning his mental capacity and impairments from Dr. Marc Quillen, plaintiff, and plaintiff's wife.

B. Dr. Quillen

Plaintiff had a consultative evaluation by Dr. Marc Quillen on July 25, 2017. Plaintiff reported short-term memory loss, losing his train of thought easily, being forgetful, being easily distracted or "spacing off", losing focus during tasks and not finishing tasks. Plaintiff also reported impaired problem solving and decision making, noting that he did not trust his decisions. (Tr. 518).

Dr. Quillen stated that plaintiff could shop, cook, do housework and laundry within his exertion limits. (Tr. 520). He stated that plaintiff was alert and oriented times four. Id. He found that plaintiff's speech was coherent and intelligent with normal rate, rhythm and volume. Id. Dr. Quillen concluded that plaintiff exhibited an impaired memory, but that his thought processes were normal, logical, linear and goal directed. (Tr. 521). Dr. Quillen further determined: that plaintiff's baseline intellectual ability was at the low end of the broad average range, based on plaintiff's speech quality and vocabulary; that plaintiff had functional language skills; that his attention and

6

concentration was mildly impaired; that his learning capacity and memory were impaired; and that his problem solving and reasoning were consistent with baseline functioning. (Tr. 523). Plaintiff was diagnosed with mild vascular hypoxic neurocognitive disorder. Id. The doctor stated:

> The current cognitive screening is highly suspicious of recent hypoxic injury to the brain, consistent with that following myocardial infarction with more than five minutes of estimated cardiopulmonary standstill. This diagnosis may be more accurately a Major vascular neurocognitive disorder, but this cannot be diagnosed without more comprehensive neuropsychological testing.

Id. Dr. Quillen concluded that this observed condition would likely prevent competitive employment because of attentional, learning, recall, and executive functioning deficits. (Tr. 524). He assessed: that plaintiff is not able to understand, carry out and remember simple and intermediate instructions; that he is not able to sustain concentration and persist in a work-related activity at reasonable pace; that he is unable to cope with normal work pressures; and that he is not capable of making financial decisions in his best interest and lacks the required ability to manage his funds. (Tr. 524-25). He also indicated that plaintiff should avoid driving and operating machinery which could cause tissue damage. (Tr. 524).

The ALJ did not find Dr. Quillen's opinion persuasive for the following reasons. First, the ALJ noted that in later examinations, plaintiff's medical providers did not document any

7

type of cognitive decline. (Tr. 35). One provider had noted, according to the ALJ, that plaintiff was alert and fully oriented.[2] Second, the ALJ found that plaintiff is able to engage in numerous activities of daily living, such as cooking, cleaning, personal hygiene, driving, shopping, and personal finance. (Tr. 36). Third, the ALJ determined that Dr. Quillen's opinion was not consistent with his own examination findings, which the ALJ decided did not reveal significant deficits in attention, learning or memory. (Tr. 36). The court notes that Dr. Quillen did <u>not</u> check boxes in his report to show that plaintiff had significant deficits in intelligence, attention, executive function or reasoning. (Tr. 521).

The ALJ stated that he found "partially persuasive" the opinion of state agency psychological consultants who concluded that plaintiff could carry out three to four step tasks. (Tr. 36). The ALJ considered this opinion to be consistent with plaintiff's activities of daily living, Dr. Quillen's examination report, and the notes of other medical providers who did not document any cognitive decline. <u>Id.</u>

In his opening brief, plaintiff contends that the ALJ erred by failing to give Dr. Quillen's opinion presumptive weight over the opinions of state agency psychological consultants because Dr.

---

[2] As already stated, Dr. Quillen noted this too.

Quillen was an examining source. Defendant has pointed out, however, that the regulations governing the ALJ's decision making have changed for claims filed March 27, 2017 or later and no longer provide that examining sources are given presumptive weight over the opinions of non-examining sources. 20 C.F.R. § 404.1527 (2017). Plaintiff does not contest this in his reply brief.

Still, plaintiff contends that the ALJ rejected Dr. Quillen's opinion without adequate justification. Plaintiff argues that the other medical sources in the record are not neuropsychologists like Dr. Quillen.[3] He asserts that being "alert and oriented" at a cardiologist appointment, and that attending to and being able to communicate effectively at other medical appointments are not inconsistent with Dr. Quillen's opinion. He also points out that his wife accompanied plaintiff to his appointments. Finally, according to plaintiff, the record shows that his memory impairment, contrary to the ALJ findings, extends beyond remembering to take his hypertension medication.

These arguments boil down to asking the court to reweigh the evidence as to plaintiff's mental impairment, particularly with regard to memory. This is something the court may not do even if

---

[3] Social Security regulations require that specialization of medical sources be considered and recognize that "a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion" of a source who is not a specialist. 20 C.F.R. § 404.1520c(c)(4). But, the regulations do not require an explanation of how specialization was considered when the medical opinions and findings were evaluated. 20 C.F.R. § 404.1520c(b)(2).

9

we might have viewed some of the evidence differently. See <u>Golden-Schubert v. Commissioner, SSA</u>, 773 Fed.Appx. 1042, 1048-499 (10th Cir. 2019)(ALJ may consider whether an medical report is consistent with activities of daily living); <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005)(court should not reweigh the evidence of substitute our judgment for that of the Commissioner). The evidence may support contradictory findings, but the court may not impose its own choice between two fairly conflicting views. <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

C. <u>Activities of daily living</u>

The ALJ made the following comments regarding plaintiff's activities of daily living.

> Although the claimant alleges significant limitations, he is able to engage in numerous activities of daily living. The claimant can cook and clean. He can care for his personal hygiene. He can handle his personal finances. He is able to drive. He is able to go shopping. Overall, the claimant's descriptions of his daily activities are essentially normal. His activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations that preclude him from work activities. Although the claimant may not be able to engage in all of the activities that he did in the past and it may take him longer to perform the tasks, he is more active than would be expected if all of his allegations were consistent with the record.

(Tr. 35). Daily activities is a factor to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms. See SSR 16-3P, 2016 WL 1119029 at *7. The ALJ's statement addresses that factor. Plaintiff claims, however,

10

that the ALJ's statement, particularly the remark that plaintiff's "descriptions of his daily activities are essentially normal," is not supported by substantial evidence.

The function report plaintiff completed stated that in a normal day plaintiff ate, watched TV, fed and took the dogs out, napped, and helped with dishes, cooking and laundry. (Tr. 258). The report stated that plaintiff fixed his own meals and that he walked and drove a car. (Tr. 260). It indicated that plaintiff shopped in stores for food, clothes and other items about two or three times a week. It further stated that plaintiff was able to pay bills, count change and handle a savings account and checkbook. Id. Plaintiff recorded that his hobbies and social activities were limited to watching television, talking on the phone, going out to eat and seeing movies. (Tr. 261). He also indicated that he traveled to see his kids and grandkids. Id.

Countering the ALJ's characterization of the function report, plaintiff emphasizes his testimony and that of his wife, as well as comments in the function report, which describe the help plaintiff receives from his family doing normal things and the limited time plaintiff spends doing daily activities. Plaintiff also cites Tate v. Colvin, 2016 WL 4679942 (D.Kan. 9/7/2016) and Beyer v. Berryhill, 2018 WL 4334296 (D.Kan. 9/11/2018) to support his argument.

The Tenth Circuit has stated that an ALJ should consider such factors as activities of daily living in making a credibility determination. Johnson v. Berryhill, 679 Fed.Appx. 682, 687 (10th Cir. 2017)(quoting Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012)). Although "credibility" is no longer a professed sub-regulatory factor (see Kellams v. Berryhill, 696 Fed.Appx. 909, 917 n.4 (10th Cir. 2017)), as already noted the ALJ may consider daily activities and weigh the evidence in deciding what those daily activities are and what they show. To the extent there is a conflict in the evidence regarding the extent of plaintiff's daily activities, the ALJ is in the best position to resolve it. Thomas v. Berryhill, 685 Fed.Appx. 659, 661 (10th Cir. 2017)(citing Allman v. Colvin, 813 F.3d 1326, 1333 (10th Cir. 2016)); see also Scott v. Berryhill, 695 Fed.Appx. 399, 404 (10th Cir. 2017)(ALJ permissibly concluded function report was inconsistent with doctor's extreme limitations although some statements in the report were consistent with the limitations).

Substantial evidence must support the ALJ's reasoning. This is not a high standard. The court finds that there is substantial evidence to support the ALJ's analysis of activities of daily living as *one* of the factors he considered in deciding the limiting effects of plaintiff's symptoms and the weight to give to Dr. Quillen's report. The ALJ considered other factors as well, including the medical reports of his various physical conditions

(Tr. 33-35) and the reports of the state agency psychological consultants (Tr. 36). The ALJ did not discount Dr. Quillen's report solely because of plaintiff's activities of daily living. He held that Dr. Quillen's report was unpersuasive because it was not consistent with Dr. Quillen's own examination findings and the treatment records of other providers. This distinguishes the case at bar from the holdings in Tate and Beyer.

> D. Staying on task

Plaintiff argues that the ALJ committed error because he found that plaintiff would have difficulty[4] in staying on task and focusing, regulating his emotions, maintaining his well-being, and controlling his behavior, but the ALJ did not include these limitations in his RFC determination or the hypothetical posed to the vocational expert. The court notes that these limitations as stated by the ALJ in his "paragraph B" analysis were not intended as a "residual functional capacity assessment but [were] used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (Tr. 32). The RFC stated by the ALJ and repeated in this order (infra, pp. 4-5) "reflects the degree of limitation [the ALJ] found in the 'paragraph B' mental functional analysis." Id. Thus, the restrictions to routine, repetitive, unskilled work with no more than occasional contact

---

[4] The ALJ said "some difficulty." (Tr. 31).

13

with coworkers and supervisors represent the ALJ's functional assessment of plaintiff's work ability considering his mental impairments.[5]

Plaintiff next argues: "Additionally, and consistent with the ALJ's finding Plaintiff could not regulate his emotions, maintain his well-being or control his behavior, Plaintiff's wife testified her husband could not live independently and has crying spells two to three times a week." Doc. No. 14, p. 12. This statement somewhat exaggerates the ALJ's finding, which is described above, and plaintiff's wife's testimony, which was that plaintiff's crying spells "can happen two or three times a week. Maybe sometimes more." (Tr. 66). Similarly, plaintiff states that: "Defendant's VE testified Plaintiff's crying spells, in and of themselves, would preclude competitive employment." Doc. No. 14 at p. 13. The testimony from the vocational expert was different. He was asked if "an individual having crying spells in the workplace, would there become a point in which that would contraindicate sustained employment?" (Tr. 72). The expert answered "yes" and agreed that it would not be "helpful" to retained employment. Id.

---

[5] In Shawbaker v. Colvin, 189 F.Supp.3d 1168, 1174 (D.Kan. 2016), this court noted that, consistent with Jaramillo v. Colvin, 576 Fed.Appx. 870 (10th Cir. 2014), "a reference to 'unskilled work' may be construed to incorporate the mental functions associated with unskilled work, which are 'the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'" (Quoting Jaramillo at p. 875).

The court has reviewed the record and concludes that plaintiff has not shown that the ALJ's RFC lacked support by substantial evidence and that plaintiff has not satisfied his burden to show that a severe impairment was not reflected in the RFC. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Nor is an ALJ required to make specific written findings as to a witness's credibility if the written decision reflects that the ALJ considered the testimony. Blea v. Barnhart, 466 F.3d 903, 915 (10th Cir. 2006). The ALJ stated that he considered "the entire record." (Tr. 29). The general practice is to take this as true. See Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005). Although he did not mention plaintiff's wife's testimony in his decision, the court does not believe the ALJ ignored it in considering this case.[6] That testimony does not alter the court's conclusion that substantial evidence supports the RFC formulation in the decision to deny benefits.

E. Carpal tunnel

After the ALJ rendered his decision, plaintiff submitted medical records from August 2018 which indicated that plaintiff

---

[6] The ALJ did refer to plaintiff's wife's function report (Tr. 244-251) as cumulative to plaintiff's reports and not consistent with the medical record for the same reasons plaintiff's reports were not consistent with the record. (Tr. 36).

15

has mild bilateral carpal tunnel syndrome. (Tr. 22). The Appeals Council found that the evidence did not relate to the period of disability alleged by plaintiff, noting that the ALJ decided plaintiff's case through June 4, 2018. (Tr. 2). Plaintiff argues before this court that the evidence relates to the period on or before the date of the ALJ's decision, citing testimony before the ALJ that plaintiff sometimes dropped things.

The Appeals Council is required to consider the evidence if it is: 1) new; 2) material; 3) related to the period on or before the ALJ's decision; 4) there is a reasonable probability that the additional evidence will change the outcome of the decision; and 5) there is good cause for not previously submitting the evidence. See 20 C.F.R. § 404.970(a)&(b). Remand is warranted if the Appeals Council fails to consider qualifying new evidence. Threet v. Barnhart, 353 F.3d 1185, 1191 (10th Cir. 2003). This is a matter for the court's de novo review. Id.

The court concurs with the Appeals Council that the evidence does not relate to the period on or before the ALJ's decision. The records describe an examination more than two months after the ALJ's decision. The records do not purport to address plaintiff's condition on or before June 4, 2018. These circumstances support the Appeals Council's decision. Cf., Tollett v. Barnhart, 60 Fed.Appx. 263, 265 (10th Cir. 2003)(rejecting evidence relating to major depression created months after the date of the ALJ's

16

decision); Wilson v. Apfel, 2000 WL 719457 *2 (10th Cir. 2000)(rejecting evidence of arthritis based upon letter written 15 months after ALJ decision although claimant complained of leg and back pain and the letter referred to ongoing treatment); Arnold v. Colvin, 2016 WL 8674690 *6 (W.D.Okla 4/29/2016)(rejecting record of arm numbness and pain made less than one month after ALJ decision ruling upon claim alleging fibromyalgia); Chevrier v. Barnhart, 2006 WL 8444088 *4 (D.N.M. 7/31/2006)(record of mental health examination dated two months after ALJ decision rejected because on its face it does not appear relevant to the time period on or before the ALJ decision on claim based in part on bipolar disorder).

    F. SSR 96-8p

Finally, plaintiff asserts that the ALJ failed to follow the requirements of SSR 96-8p when he delivered his decision. SSR 96-8p states in part that "RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." 1996 WL 374184 at *2. The ruling contains a more detailed elaboration of the "narrative discussion requirements" which describes the types of evidence that must be discussed, how the resolution of inconsistencies in evidence should be explained, and what the RFC assessment must include. Id. at *7. These

requirements were met by the ALJ.  Plaintiff argues that the ruling requires that the RFC – a claimant's work abilities - be formulated keeping in mind an ordinary work setting on a regular and continuing basis.  Contrary to plaintiff's assertions, the court is persuaded from a review of the record and the testimony of the vocational expert that the ALJ considered plaintiff's work abilities in the context of working on a regular and continuing basis and that this was the backdrop for the ALJ's discussion of his RFC findings.

IV. CONCLUSION

For the above-stated reasons, the court affirms defendant's decision to deny plaintiff's application for social security benefits and shall dismiss this action to reverse the decision.

**IT IS SO ORDERED.**

Dated this 10th day of December, 2019, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge